# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES R. WALL, SR., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER AND** |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **AND RECOMMENDATION** |
| | ) | |
| THE ALDERMAN COMPANY, | ) | 1:08CV785 |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's motion for summary judgment (docket no. 19) and motion to strike. (docket no. 28.) Plaintiff James Wall has responded to the summary judgment motion. In this respect, the matter is ripe for disposition. Since there has been no consent to the jurisdiction of a magistrate judge, I must address the dispositive motion by way of a recommended disposition. For the following reasons, Defendant's motion to strike will be denied, and it will be recommended that the court grant Defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff was employed as a lab technician and color analyst in Defendant Alderman Company's ("Defendant" or "Alderman") commercial photography lab in Guilford County, North Carolina from 1976 to March 21, 2008,[1] when his employment was terminated. Plaintiff was 65 years old at the time of his termination.

---

[1] Plaintiff had previously worked for Defendant in the color lab from 1967 to 1975, when he left for a year to pursue other opportunities. He returned in 1976.

On October 29, 2008, Plaintiff filed this lawsuit against Defendant, alleging that his employment was terminated because of his age in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA").

**FACTS**

Defendant's Business

Defendant Alderman is a North Carolina corporation that is engaged in the commercial photography industry. Defendant has a large facility with a warehouse and many departments, including sales, shipping, pickup and delivery, carpentry, a studio, digital lab, graphics lab, upholstery, creative, personnel, interior design, and set-up and assembly. (Dep. of Plaintiff 30.) Alderman employs approximately seventy-five to eighty employees, the same amount of employees it had in January 2008. (Dep. of Louise Saintsing 31.)

Photography technology has evolved over the years, and in 2002 or 2003, Defendant's color lab stopped working with film and began the transition to digital photography. In late 2002, Defendant purchased an Indigo digital printing press, the single largest expenditure since Jeff Williams became president of Alderman in 2000. (Dep. of Jeffrey Williams 8; 55.) The Indigo printing press did the same volume of work as Defendant's six photographic paper printing presses and two enlargers. (Williams Dep. 55.) In addition, it only took one employee to operate the Indigo press, as opposed to up to twelve employees who had operated the film

printers. (*Id.* at 34.) The digital technology simply did not require as much manpower as the film technology. (Williams Dep. 12; Saintsing Dep. 17.) The color lab was shut down in 2006 and became the graphics department. (Pl. Dep. 22; Williams Dep. 42.)

Beginning in 2005, as Defendant experienced a marked decrease in sales, the graphics department where Plaintiff worked experienced a seventy-five percent decrease in workload. (Williams Dep. 10; Pl. Dep. 25; 31; 45-46; Saintsing Dep. 14; 21.) By 2008, despite cost reductions by Defendant, the graphics department was losing money. (Williams Dep. 12-13.) The new digital technology meant that just two people could efficiently operate the department. (Pl. Dep. 46; 54; Williams Dep. 15.) The two employees left in the department are in their 40's. (Saintsing Dep. 16.)

Plaintiff's Employment at Alderman

Plaintiff spent almost his entire career working in the film lab (which later became the graphics department) at Alderman. (Saintsing Dep. 4.) His job included various responsibilities in the production of photographic prints. (Williams Dep. 8.) In 1999, Plaintiff was moved from the color lab to the shipping and finishing room, where he was responsible for shipping and packaging prints, and trimming, mounting, and laminating prints. (Compl. ¶ 11.) Plaintiff had no training, education, or experience in the new digital technology and equipment, and, according to Defendant, Plaintiff never expressed any interest in operating or learning to operate the digital equipment. (Saintsing Dep. 22.) Plaintiff alleges in his complaint that "on

-3-

several occasions [he had] spoken to Louise Sing Sing [sic], Defendant's personnel director about his desire to seek and be considered for new positions and/or further job responsibilities at the Company." (Compl. ¶ 13.) Saintsing testified, however, that Plaintiff only asked about other jobs in the company, not digital work, and he asked for no specific position or job responsibilities. (Saintsing Dep. 13; Williams Dep. 14; Pl. Dep. 49-50.) In fact, according to Saintsing and Williams, Plaintiff was not capable of doing the digital work. Because the workload in film had decreased so much, Defendant tried to find other jobs for Plaintiff and, in essence, created jobs for him that others could have done much more cheaply, such as scraping floors and knocking down walls where the darkrooms had been. (Saintsing Dep. 21-22; Pl. Dep. 31-32.) After that work was completed, management met to determine if there was any work in any other department that Plaintiff could perform. (Saintsing Dep. 27-28; Williams Dep. 16-17.) According to Williams, there simply was no other work for which Plaintiff was qualified. (Williams Dep. 16.) The only available positions involved physically demanding labor, which, Williams testified, based on his observation of Plaintiff's work scraping floors and knocking down walls, Plaintiff physically could not perform. (Williams Dep. 40.) In fact, Plaintiff often slept on the job. (Pl. Dep. 54; 57-58; Saintsing Dep. 37-38.)

On March 21, 2008, Williams informed Plaintiff that his employment with Alderman was terminated. (Compl. ¶ 12.) Plaintiff was given the maximum

-4-

severance pay allowed under company policy. (Pl. Dep. 87.) Plaintiff has not worked since his termination. (Pl. Dep. 34.)

Other Employees at Alderman

Plaintiff alleges in his complaint that Defendant has hired new employees or transferred existing employees who perform the same job functions and duties Plaintiff previously performed. (Compl. ¶ 14.) In his deposition, however, Plaintiff admitted that he was aware of no such hires. (Pl. Dep. 51; 55-56.) According to Williams and Saintsing, Defendant has hired no one to replace Plaintiff and has not hired any new employees in Plaintiff's old department since his termination. (Saintsing Dep. 22; Williams Dep. 20; 59.) Alderman did hire a new employee, a woman who has a degree "related to digital imaging," in the Digital Imaging Department to work in the quality control area. (Williams Dep. 20.) In fact, according to Williams, since digital technology has become more complex, Alderman has had to start hiring only people with degrees in photography. (*Id.* at 29.) Another employee, Robert Yoder, was terminated at the same time as Plaintiff. (*Id.* at 33; Saintsing Dep. 29.)

**STANDARD OF REVIEW**

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56©; *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir.

1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).

"Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Celotex Corp.*, 477 U.S. at 324. Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (*see* FED. R. CIV. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Id.* Moreover, the non-moving party

must proffer "sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) and *Evans v. Techs. App. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**DISCUSSION**

**A. Defendant's Motion to Strike**

Defendant has moved to strike Plaintiff's affidavit submitted with Plaintiff's response brief in opposition to Defendant's summary judgment motion. In this two-paragraph affidavit, Plaintiff states that Darrell Staton, the lab supervisor at Alderman, told Plaintiff on "multiple occasions" that he [Plaintiff] was "too old to work long hours, too old to do heavy lifting, too old to learn how to run the Indigo or the ink jet and that we [Defendant] did not need the headaches." (docket no. 27, Ex. 4, Pl. Aff. ¶ 1.) Plaintiff also states that "Darrell Staton asked Kevin Weavil to train on the Indigo and ink jet." (*Id.* ¶ 2.)

Defendant contends that Plaintiff's affidavit contains inadmissible hearsay statements. In addition, Defendant points out that Plaintiff's response brief makes no mention of Plaintiff's affidavit or the third-party declarations contained therein.

-7-

The discovery period has ended, and the third-party declarant, Darrell Staton, was not deposed. In his deposition, Plaintiff mentioned Staton, but never stated that Staton had made the out-of-court declarations as Plaintiff contends in his affidavit. Plaintiff has not responded to the motion to strike.

Under Rule 56(e), an affidavit put forth to support or oppose summary judgment must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e). Hearsay testimony may not be relied upon in support or defense of summary judgment. *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991).

I note that Plaintiff's affidavit is singularly unconvincing and insufficient to create a genuine issue of material fact and appears to be offered solely to defeat summary judgment. Plaintiff, however, does not offer the testimony to prove the truth of the matter asserted, *i.e.*, that Plaintiff was too old to do his job, but rather to prove the state of mind of the decision makers at Alderman. As such, the statements do not amount to hearsay.[2] *See Wright v. Southland Corp.*, 187 F.3d 1287, 1304 n.21 (11th Cir. 1999).

Defendant also argues that the affidavit is irrelevant. I agree. Plaintiff listed Staton in his initial discovery disclosure, but provided no identifying information, no

---

[2] "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801©.

address or phone number, and no indication of what discoverable information Staton possessed. There is no allegation in the complaint about any statements made by Staton or any other Alderman employee. Plaintiff's affidavit is clearly a last-ditch attempt to stave off summary judgment and is unsubstantiated and self-serving. Because the affidavit does not contain admissible hearsay, however, I will deny Defendant's motion to strike but will not give the affidavit any weight on summary judgment.[3]

### B.  Defendant's Motion for Summary Judgment

As noted, Plaintiff brings a claim for age discrimination under the ADEA.  *See* 29 U.S.C. § 623(a).  The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age."  29 U.S.C. § 623(a)(1) (emphasis added).

To satisfy ordinary principles of proof in discrimination cases, a plaintiff must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact.  *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988).  Because it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has

---

[3] I note as well that Plaintiff has not responded to Defendant's motion to strike, and the time to do so has expired.  The motion, therefore, is unopposed and under the court's local rules "ordinarily will be granted without further notice."  LR 7.3(k).

created a burden-shifting structure for analyzing such claims. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this burden-shifting structure, known as the "*McDonnell Douglas*" framework, the plaintiff must first plead certain facts creating an inference of discrimination and referred to as the plaintiff's prima facie case. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (assuming that the *McDonnell Douglas* framework was "fully applicable" in both Title VII and ADEA actions).

To establish a prima facie case of age discrimination under the *McDonnell Douglas* framework, Plaintiff must show that (1) he is a member of the protected class;[4] (2) he was terminated; (3) at the time of his discharge he was performing at a satisfactory level, meeting Defendant's legitimate expectations; and (4) following his discharge, he was replaced by a substantially younger employee with comparable qualifications. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1992); *Martin v. Patrick Indus., Inc.*, 478 F. Supp. 2d 855, 859 (M.D.N.C. 2007); *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 869 (M.D.N.C. 2003).

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the challenged action; however, this burden "is one of production, not persuasion." *Reeves*, 530 U.S. at 142. If the employer demonstrates a legitimate, nondiscriminatory reason, the presumption of unlawful discrimination created by the prima facie case "drops

---

[4] For ADEA purposes, the protected class is comprised of individuals who are at least 40 years of age. *See* 29 U.S.C. § 631(a).

-10-

out of the picture," and the burden shifts back to the employee to show that the given reason was merely a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995). The responsibility of proving that "the protected trait . . . actually motivated the employer's decision" remains with the plaintiff at all times. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Thus, it is not enough for a plaintiff merely to raise an inference of discrimination. Rather, a plaintiff bears the ultimate burden of proving that the decision was made not on any proffered grounds but instead on the basis of impermissible discriminatory grounds. *Reeves*, 530 U.S. at 143. To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists as to this question. *Goldberg*, 836 F.2d at 848.

Finally, I note that the Supreme Court has recently held that, with respect to age discrimination claims under the ADEA, a plaintiff must prove that age was the "but-for" cause of the adverse employment action; therefore, it is not enough for a plaintiff in an age discrimination case to show that age was merely a "motivating" factor in the decision. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009). The plaintiff has the burden of persuasion to establish, by a preponderance of the evidence, that age was the "but-for" cause of the discrimination. *Id.* Most courts that have addressed this issue after *Gross*, however, have continued to apply

-11-

Case 1:08-cv-00785-NCT-WWD   Document 31   Filed 12/21/09   Page 11 of 16

the *McDonnell Douglas* framework at the summary judgment stage, while recognizing that at trial, as in *Gross*, the plaintiff bears the burden of proving by a preponderance of the evidence that discrimination was the but-for cause of the adverse employment action. *See Ferruggia v. Sharp Elecs. Corp.*, Civ. No. 05-5992, 2009 WL 2634925 (D.N.J. Aug. 25, 2009) (collecting cases); *Thornton v. Baltimore City Bd. of Sch. Comm'rs*, Civ. No. WMN-07-1555, 2009 WL 3767090 (D. Md. Nov. 9, 2009). With these principles in mind, the court now turns to Plaintiff's age discrimination claim.

Here, Plaintiff has put forward no direct evidence of age discrimination; therefore, he must proceed under the *McDonnell Douglas* burden-shifting scheme.[5] Plaintiff clearly meets the first and second prongs of the prima facie case--he was 65 years old when his employment was terminated, and he was therefore a member of the protected class. Plaintiff, however, has not put forth any evidence demonstrating the remaining elements of a prima facie discrimination case.

The third element of the prima facie case in a termination case requires Plaintiff to show that at the time he was terminated he was qualified for the position, was meeting his employer's legitimate expectations, and was terminated despite his qualifications and performance. Plaintiff contends that his job performance

---

[5] The only arguable direct evidence of discrimination is contained in Plaintiff's affidavit. As discussed above, however, this affidavit is self-serving and unsubstantiated by any other evidence in the record. As such, it is entitled to no weight on summary judgment. *See* discussion *infra* pp. 7-9.

evaluations all show that he was meeting the standards and expectations of Alderman. While this fact might be technically true, *i.e.*, Plaintiff never received any negative job evaluations, the argument misses the point. Defendant contends that Plaintiff was not meeting Defendant's expectations when he was let go in that because of new technology, his primary job of processing film had become obsolete. Plaintiff simply did not have the background, experience, or training to operate the new digital equipment, nor did he express any interest in learning. There were no other jobs for which Plaintiff was qualified. Moreover, Plaintiff, by his own admission, had trouble staying awake in his last years on the job. Plaintiff offered no evidence by way of affidavits or depositions, other than his own testimony and self-serving affidavit. Plaintiff has not met his burden of showing that he was meeting the legitimate job expectations of Defendant when his employment was terminated.

Plaintiff further has not shown that he was replaced by a substantially younger employee with comparable qualifications. There is no evidence that any individuals from outside the company were hired to fill Plaintiff's position. The only evidence of record is that there are two employees who remain in the graphics department, and they perform a variety of jobs and meet all of the department's needs. These employees were in the department when Plaintiff worked there, and they had training and experience with regard to digital technology. As a result, Plaintiff's qualifications were not "comparable" to those of the two remaining employees.

-13-

Even if Plaintiff were found to have presented a prima facie case of discrimination, Defendant has articulated a legitimate, non-discriminatory reason for its decision to terminate Plaintiff. Specifically, Defendant has presented evidence that its business experienced a significant downturn as photo technology was evolving from film to digital. The purchase of the new digital equipment was obviously part of Alderman's attempt to stay competitive, become more efficient, and, indeed, remain in business. The new digital equipment required fewer, but more highly trained and educated, employees. The department in which Plaintiff worked for almost his entire career was losing money because of the decreased workload. At the time of his termination, Plaintiff did not know how to operate the digital equipment and was not qualified to work in any other department. In light of the new technology, Defendant's decision to let Plaintiff go and to retain two employees who had digital experience was simply a wise business move. *See Bowen-Hayes v. Troxler Elec. Labs*, No. 1:05CV00379, 2007 WL 1101226, at *5 (M.D.N.C. Apr. 11, 2007) (under similar factual scenario, court found that employers's proffered reason for termination was legitimate and not a pretext for age discrimination, noting that courts have found that layoff decisions often reflect "business realities, not age discrimination").

Once an employer has articulated a legitimate, non-discriminatory reason for terminating an employee, the burden then shifts back to the employee to establish that the employer's reason is merely a pretext for age discrimination. Here, Plaintiff

-14-

has presented no evidence that Defendant's stated reason for terminating Plaintiff was merely pretextual and that Defendant really fired him because of his age. For instance, Plaintiff has submitted no evidence that Defendant intentionally kept him from learning or training on the new digital equipment for the purpose of having an excuse to fire him, when the real reason was his age. Although Plaintiff contends he was never offered the opportunity to train, and other employees were given training, he also admits that he never asked for the training. When he approached management in 2008 to ask for other jobs, he admits that he was asking for jobs in other parts of the company, not in the digital imaging department. Moreover, Plaintiff has offered no evidence that he was denied digital training because of his age.[6]

In sum, there is no reasonable basis for a jury to conclude that Defendant intentionally discriminated against Plaintiff and that "but for" Plaintiff's age he would not have been terminated. Accordingly, summary judgment is appropriate.

---

[6] The court notes that in his brief Plaintiff appears to be asserting a mixed-motive claim, arguing that "Plaintiff need not show that prohibited discrimination was the sole motivating factor, just that it was a motivating factor." (Pl. Br. in Resp. to Def.'s Mot. for S.J. 6.) In *Gross*, however, the Supreme Court noted that the text of the ADEA does not authorize a mixed-motive age discrimination claim. *Gross*, 129 S.Ct. at 2350. The Supreme Court also noted that it "has not definitively decided" whether the *McDonnell Douglas* framework, first applied in the context of Title VII cases, "is appropriate in the ADEA context." *Id.* at 2349 n.2. In the absence of further direction from the Supreme Court, this court must follow Fourth Circuit precedent, which applies the *McDonnell Douglas* framework to ADEA claims. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004). As of today's date, there have been no published Fourth Circuit age discrimination cases since *Gross*.

**CONCLUSION**

For the reasons stated herein, Defendant's Motion to Strike (docket no. 28) is **DENIED**. Furthermore, it is **RECOMMENDED** that the court **GRANT** Defendant's motion for summary judgment (docket no. 19) and dismiss Plaintiff's action in its entirety.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
December 21, 2009